Hely, J.
I. INTRODUCTION
This case was tried before the court on October 27 and 28, 1997. The two claims pressed by the plaintiff at trial were: (1) Metropolitan breached contract and statutoiy obligations to pay $1808 in Personal Injury Protection (PIP) benefits to him under his automobile insurance policy; and (2) Metropolitan’s handling of the plaintiffs PIP and underinsured motorist claims *143 violated G.L.c. 93A and 176D. The parties agreed that the contract claim based on the underinsured motorist coverage has been resolved by an arbitration award which Metropolitan has paid.
Based on an assessment of the weight and credibility of the evidence, the court finds for Metropolitan on both issues. The medical expenses in the PIP claim have already been paid, and Metropolitan did not engage in any unfair or deceptive practice in handling the claims.
II. THE PIP CLAIM
On January 15, 1993, the plaintiff was injured in an automobile accident with a second vehicle driven by David Taardie. The plaintiffs vehicle was insured by Metropolitan. The plaintiff sued Tardie for negligence. With Metropolitan’s consent, the plaintiff settled his suit against Tardie for $25,000, the liability limit under Tardie’s policy. The Tardie settlement was reached on September 11, 1995.
The plaintiff contends that Metropolitan still owes him $1808 for medical bills that he submitted to Metropolitan under his PIP coverage. The plaintiff also made a demand to Metropolitan to pay him the policy limit of $75,000 under the underinsured motorist coverage. As noted earlier, the underinsured motorist claim has been resolved by arbitration. On the particular facts of this case, the arbitration award is also dispositive of the PIP claim because the arbitrators determined the plaintiffs total damages for injuries from the accident and these damages have been paid.
It is clear from the arbitration award that the arbitrators assessed the plaintiffs total damages “for injuries sustained by him in a motor vehicle collision on January 15, 1993.” Ex. 21 at 3. Based on the evidence submitted by the plaintiff, the arbitrators found that the plaintiff had incurred medical expenses of $5132. These medical expenses were found to be reasonable, and they were included in the arbitrators’ calculation of the total damages. The plaintiffs total damages as determined by the arbitrators were $50,132. The arbitrators’ fact determination on the total damages was an essential part of the decision. It is binding on the parties.
The arbitrators then determined the amount of the damages that had already been paid to the plaintiff: $25,000 paid by Tardie’s insurer (“the primary insurer”); and $2592.29 that had been previously paid by Metropolitan under the plaintiff s PIP coverage. By deducting the paid amounts, the arbitrators determined that the net amount due from Metropolitan was $22,539.71. The parties agree that Metropolitan paid this amount to the plaintiff following the award.
The plaintiff has therefore been paid in full for his total damages. The total damages as found by the arbitrators included all of the plaintiffs medical expenses. When the arbitrators went on to calculate the net award, they credited Metropolitan only for the payment from Tardie’s insurer and for the PIP payments that Metropolitan had already paid. The previously unresolved PIP claim for $1808 in medical expenses was thus included as part of the net award that the arbitrators found to be still due from Metropolitan. Metropolitan paid this award, and it is not required to pay the $1808 a second time as part of the plaintiffs present action under the PIP coverage.
The court recognizes that the Agreement to Submit to Arbitration (Ex. 23) excluded from the arbitration matter the plaintiffs claims in the present action, Bristol C96-00418. The arbitration award therefore did not purport to decide the PIP claim per se. Nevertheless, in the course of deciding the value of the uninsured motorist claim, the arbitrators’ decision did make a binding determination of the amount of the plaintiffs total damages, including all medical expenses. Because the plaintiff has received full payment of the arbitration award, including payment of all previously unpaid medical expenses, he is not entitled to be paid second time under the PIP coverage for the same medical expenses.
III. THE UNFAIR OR DECEPTIVE PRACTICES CLAIM
The claims under G.L.c. 93A and 176D depend on the settlement discussions between the plaintiffs attorney and various Metropolitan claims representatives. All the witnesses were honest and honorable, but they had different memories and interpretations of these discussions. The court’s findings are based on an assessment of the relative weight and reliability of the testimony and exhibits.
Following the accident the plaintiff submitted a variety of medical service bills to Metropolitan for payment under the PIP coverage. Some of the bills were promptly paid. For others, Metropolitan requested further documentation. For example, Metropolitan wanted “explanation of benefits” forms from the plaintiffs health maintenance organization on why certain expenses were not included within the HMO’s service or coverage. The HMO’s “explanations” were skimpy at best. The plaintiff in good faith obtained and submitted as much information as he could. Metropolitan in good faith and with reasonable diligence sought more information. The delays on these bill were caused by the HMO’s lack of explanations and the inherent complexity of the HMO and multi-party medical payment system.
Another friction point was a town ambulance service bill which Metropolitan had paid early on. The town kept billing the plaintiff for this service erroneously. The plaintiff naturally kept sending the bill on to Metropolitan. Metropolitan was not required to pay it twice.
*144 On October 13, 1995, plaintiffs counsel sent Metropolitan a demand package detailing the plaintiffs total damages. He demanded the $75,000 policy limit on the underinsured motorist coverage. Since the plaintiff had already been paid $25,000 by Tardie’s insurer, the plaintiff was claiming that his total damages were $100,000.
In the next several months, a series of of Metropolitan claims representatives and settlement team members spoke by telephone with plaintiffs counsel or his office staff regarding the claim. In early December, 1995, Metropolitan valued the total damages at $24,000 to $31,000. After crediting the $25,000 primary insurance payment, they offered plaintiffs counsel $5500. The parties’ opening positions — $75,000 and $5500 — were a long way apart. Metropolitan’s first offer was conservative, but it was not a bad faith or unreasonable opening considering the plaintiffs outer-edge first demand and the insurer’s legitimate concerns over the plaintiffs preexisting back condition.
In a telephone discussion on December 4, 1995, Metropolitan asked plaintiffs counsel for a more reasonable demand. He replied that he would not respond to their ridiculous offer and said he would be filing for arbitration. Their next discussion was on January 9, 1996. Plaintiffs counsel described some of the specifics of the plaintiffs impaired activity. The insurer offered $10,000. This was still not unreasonable considering the plaintiffs age (30) and his potential for physical recovery. Plaintiffs counsel indicated he would come down to $65,000 but would not settle for any less.
On December 27, 1995, plaintiffs counsel sent Metropolitan a Chapter 93A demand letter alleging various violations of G.L.c. 93A and 176D. Although this letter was properly delivered to Metropolitan by certified mail, it never came to the attention of the claims representatives handling the plaintiffs claim. The claims representative who negotiated with plaintiffs counsel by telephone on Janurary 9, 1996, was unaware that a 93A demand letter had been sent to and received by the company. In the 93A letter, plaintiffs counsel pressed his original demand figure of $75,000. He stated that if there was no resolution in thirty days he would demand arbitration and also seek triple damages and attorney fees.
The parties had no further substantive discussion toward settling the claim. The plaintiff filed for arbitration in March, 1996. In the same month, he entered the present action in Superior Court. The arbitration was completed on October 4, 1996, with the filing of the arbitrators’ decision.
Metropolitan’s conduct in the handling of the PIP and underinsured claims did not amount to unfair or deceptive conduct, and they did not engage in any unfair claim settlement practice in violation of G.L.c. 176D, Sec. 3(9). The plaintiff was not compelled to institute litigation to recover amounts due under the policy. When the plaintiff filed his 93A letter in December 1996, the parties were still negotiating. Considering the nature of the plaintiffs condition, reasonable negotiations did not require Metropolitan to leap toward the policy limit demand with little or no sign of movement from the plaintiff. See Van Dyke v. St. Paul Fire & Marine Insurance Co., 388 Mass. 671, 678 (1983) (insurer had a reasonable prospect of success at trial when it declined to settle).
Negotiation is a two-way street. Metropolitan’s offers were cautious but not unreasonable for the early stages of negotiations. There was no stonewalling or lowballing. The insurer has a duty to act promptly, fairly and equitably in settling cases such as this where there was undisputed underinsured coverage. G.L.c. 176D, Sec. 3(f). But in this case it was the plaintiff who chose to invoke the arbitration process early after moving only slightly from his high-end demand. The insurer did not force the plaintiff into either litigation or arbitration by bad faith, dilatory or unreasonable negotiation conduct.
' One form of unfair claim settlement practice is for an insurer to offer substantially less than the amount ultimately recovered by the insured. G.L.c. 176D, Sec. 3 (9) (g). In comparison with the arbitration award of $22,539.71, the insurer’s $10,000 offer in this case was 44% of the award. This was much closer, and in hindsight more reasonable than the plaintiffs $65,000. The plaintiffs demand was 288% of the award.
The insurer never answered the plaintiffs 93A letter because the persons handling the claim did not learn that a 93A letter had been received by Metropolitan until this suit was filed. A failure to answer a 93A demand letter is not a per se violation of Chapter 93A. Such a failure may amount to a violation of G.L.c. 176D, Sec. 3(9), if the plaintiff is harmed by the lack of a response. A failure to respond can also be a basis for multiple damages if a refusal to grant relief on demand was made in bad faith or with reason to know that the alleged underlying unfair practice was aviolation. G.L.c. 93A, Sec. 9(3). In this case, Metropolitan’s bureaucratic slip in not answering the 93A demand did not cause any damages to the plaintiff. The parties proceeded to arbitration, and the plaintiff received a reasonable arbitration award unaffected by the lack of any reply to his letter. A plaintiff is not entitled to recover for a violation of Chapter 93A or 176D unless he is “adversely affected by that violation.” Van Dyke, supra, 388 Mass. At 678.
IV. ORDER
A judgment will enter for the defendant Metropolitan dismissing the plaintiffs claims.